2026 IL App (2d) 250563-U
No. 2-25-0563
Order filed July 20, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

SARAH J. GROTHE, Defendant-Appellant

Appeal from the Circuit Court of Kendall County.

Honorable Stephen L. Krentz, Judge, Presiding.

No. 23-CM-372

JUSTICE MULLEN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

## ORDER

¶ 1    *Held*:  Evidence was sufficient to prove beyond a reasonable doubt that defendant charged with resisting or obstructing a peace officer knew that she was being arrested; trial court did not err in limiting defendant's testimony; arresting officer's testimony expressing an opinion about the criminal justice system was not plain error; and trial and posttrial counsel were not ineffective.

¶ 2    Following a jury trial in the circuit court of Kendall County, defendant Sarah J. Grothe, was found guilty of resisting or obstructing a peace officer (720 ILCS 5/31-1 (West 2022)) and driving while her license was suspended (625 ILCS 5/6-303(a) (West 2022)).  Pursuant to an agreement between the parties, the trial court sentenced defendant to a 12-month term of conditional discharge for the former offense and a 12-month term of court supervision for the latter. Defendant argues on appeal that: (1) the State failed to prove her guilt beyond a reasonable doubt;

(2) the trial court erred in barring her from testifying about certain matters; (3) the arresting officer's testimony included improper commentary about the criminal justice system in Illinois; and (4) she did not receive the effective assistance of counsel. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4     At defendant's jury trial, Plano police officer Samuel Savage testified that on the evening of December 7, 2023, he was dispatched to Plano High School in connection with what he described as a dispute about a child custody order. Savage spoke with Carlos Padilla by phone and in person at the school. He also spoke by phone with defendant. Defendant advised Savage that she was at Casey's General Store (Casey's) in Plano. Savage proceeded to that location. When he arrived, he observed defendant and two children in a parked vehicle. Defendant drove off and Savage followed her vehicle. Defendant parked in the lot of a Subway restaurant. At some point Savage obtained information about the status of defendant's driver's license. Savage pulled up behind defendant's vehicle and activated his vehicle's emergency lights.

¶ 5     Defendant exited her vehicle and Savage approached her. Savage testified that he and defendant had a brief conversation. Savage "explained to [defendant] the reason why [he] was there," and "asked to see the kids." After checking on the children, Savage "explained to [defendant] that she was under arrest for driving suspended." Savage testified:

> "I told her right away that your license is suspended, you're under arrest, you know, come with me. We're just going to go and get a court date. You're going to get released in an hour. It's a blue state. Cooperate. Don't do this. Please don't do this in front of your kids."

¶ 6     Savage testified, "the message to her was, like, this is a Class A misdemeanor. Like, you're not going to *** jail." Defendant objected to the testimony as irrelevant. The trial court overruled the objection, at which point Savage explained that "blue state" was "a phrase that we have

amongst officers sometimes referring to the fact that *** our state of Illinois may sometimes have *** a habit of being a little light on people."

¶ 7    Savage testified that he reached for his handcuffs, at which point defendant turned away from him and "went to the front of the car."  Savage approached defendant and "*** got up to her and *** put [his] arms on her wrist and started to bring them like for a handcuffing position towards the small of the back."  At that point, defendant "twisted her body away."  Savage testified, "She put her hand up.  There was a lot of like verbal—like not wanting to cooperate, but twisted away, put her arm up, tried to get away saying, no, no, no, things like that."  One of defendant's hands broke free from Savage's grip, but he maintained his grasp on her other hand and he "used that to bring her down to the ground *** and took her into custody."  At that point, there were three other officers at the scene.

¶ 8    Savage was in uniform during the encounter and he was driving a marked squad car equipped with a dashboard camera that recorded the incident.  The recording contains both video and audio.  Initially, Savage's conversation with defendant is inaudible.  At the point when Savage approaches defendant with handcuffs, she raises her voice and can be heard saying "I didn't do nothing. What did I do?"  Just before pulling defendant to the ground, Savage tells her "You're under arrest" in a raised voice.  The recording was admitted into evidence, and the video portion was played for the jury without sound.

¶ 9    On cross-examination, Savage testified that he spoke with defendant by phone multiple times during the evening in question.  Savage denied that, when he encountered defendant in the Subway parking lot, he asked her why she had hung up on him.  The State introduced evidence that defendant's license was suspended.

¶ 10　　Defendant testified that Carlos Padilla was her daughters' father. On December 7, 2023, Padilla had temporary custody of the children, but she had visitation that day. At 6 p.m. defendant and one of her daughters went to another daughter's Christmas concert at Plano High School. Padilla was there as well. After the concert, defendant told Padilla that she was going to take the two girls to dinner before returning them to him. They then went to the Subway. After they ate, defendant drove with her daughters to Casey's. When they arrived, defendant received a call from Padilla. She told him where she and her daughters were and that she was going to bring them home. After that call, defendant received a call from a number that she did not recognize. When she answered, a man she did not know started yelling at her about her daughters. Defendant hung up while the caller was still speaking, but before doing so she told him that she was at Casey's. Defendant received more calls from the same number, but she did not answer them. When she drove off from Casey's she noticed five police cars behind her. She pulled into the Subway parking lot, at which point the police vehicles' lights were activated.

¶ 11　　Defendant stepped out of her vehicle to show the police that her children were alright. She was expecting to have a conversation about the custody arrangement between her and Padilla. Defendant testified that Savage asked her why she had hung up on him, but the trial court sustained the State's objection and instructed the jury to disregard the testimony. When defense counsel asked defendant what happened next, defendant began to again testify about what Savage asked her. The State objected that the testimony was hearsay. During a sidebar, the trial court asked defense counsel if she was attempting to impeach Savage's testimony. Counsel responded, "I am not attempting impeachment. Except that this really just goes to her mental state. *** [H]e was asking questions and she was just confused. I think she was tying it with the children. They're there to talk about the children." The trial court sustained the objection on hearsay grounds.

¶ 12    Defendant testified that officers led her children away, at which point Savage grabbed her hand and "whipped [her] around." She added, "I hit the other vehicle that was parked next to me. And threw me on the ground [*sic*]. That's what happened." Defendant testified that, before that point, Savage had not told her that she was under arrest. She also testified that Savage had not told her that her license was suspended, but the trial court sustained the State's objection to the testimony and instructed the jury to disregard it. Defense counsel asked defendant if, during her encounter with Savage, she was aware that her license was suspended. The State objected that her knowledge that her license was suspended was irrelevant. Defense counsel explained that she was offering the evidence to show that, unaware there was any basis for arresting her, defendant did not realize that she was, indeed, under arrest. The trial court sustained the objection.

¶ 13    During a sidebar, defense counsel asked the trial court to revisit its ruling sustaining the State's objection to defendant's testimony that Savage did not tell defendant that her license was suspended. Counsel stated:

"Officer Savage did testify that he told [defendant] her license was being suspended—her license was suspended.

And so for that purpose I would like to *** bring out that she still didn't know her license was suspended after talking to him."

When the trial court asked whether Savage testified that defendant's license was suspended, the prosecutor responded, "No, your Honor. [Savage] testified that he placed her under arrest for her license being suspended," adding "I made a point not asking if he knew her license was suspended." The court adhered to its initial ruling.

¶ 14    The jury found defendant guilty of resisting or obstructing a peace officer and driving while her license was suspended. Defendant filed a motion for a new trial arguing that the trial court

erred by "[sustaining] the State's objection to the question of whether the arresting officer told [defendant] that she was under arrest and/or whether the arresting officer told [defendant] she was under arrest for driving under a suspended license." Prior to the hearing on the motion, substitute counsel was appointed for defendant. Following a hearing, the court denied the motion, reasoning that defendant improperly conflated the reason for her arrest with the process of being arrested. The court explained that whether defendant knew that her license was suspended was relevant to whether she understood *why* she was being arrested, which was not an issue in the case. The court added:

> "[E]ven if [defendant] believed her license was valid and I allowed her to testify to that, her knowledge of that and her state of mind as to that specific issue would not have been relevant. And I do find that the prejudicial effect of that information would have outweighed any probative value.
>
> *** [A]llowing her to testify she believed her license was valid would have potentially created confusion back in the jury room during deliberations because the jurors might have inferred they had the right to consider whether her belief she was innocent of the underlying offense could potentially justify her resistance of what was otherwise a lawful arrest. And I don't think a curative instruction to the jury would have been sufficient to correct that harm."

After denying defendant's motion, the court sentenced defendant in accordance with an agreement between the parties, and this appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    We first consider the sufficiency of the evidence to prove defendant guilty of resisting or obstructing a peace officer. In reviewing a challenge to the sufficiency of the evidence in a criminal proceeding, " 'the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 17    Section 31-1 of the Criminal Code of 2012 (Code) (720 ILCS 5/31-1(a) (West 2022)), provides, in pertinent part:

"(a) A person who knowingly:

(1) resists arrest, or

(2) obstructs the performance by one known to the person to be a peace officer ***

of any authorized act within his or her official capacity commits a Class A misdemeanor."

In challenging the sufficiency of the evidence, defendant first contends that the State failed to prove that she acted with the requisite mental state. In *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 51, cited by defendant, we acknowledged case law describing resisting or obstructing a peace officer as a specific intent crime. We concluded however, that those cases "used the term 'specific intent' to refer to a mental state of knowledge rather than to say that the obstruction statute has an element that is required above and beyond the mental state of knowledge." *Id.* ¶ 53.

¶ 18    Section 4-5 of the Code (720 ILCS 5/4-5 (West 2022)) provides, in pertinent part:

"A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists.

(b) The result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct."

Where, as in this case, a statute specifies a mental state for a crime without distinguishing among the elements of the offense, that mental state applies to each element of the offense. *Id.* § 4-3. Thus, to prove that a defendant knowingly resisted arrest, the State must prove both that the defendant's resistance was knowing and that the defendant knew that what he or she was resisting was an arrest. As we recently stated, "[o]ne cannot knowingly resist an arrest until one knows that it is occurring." *People v. Borders*, 2020 IL App (2d) 180324, ¶ 54.

¶ 19     Defendant argues that the State's evidence fell short because it did not establish that, when she resisted Savage's attempt to place her in handcuffs, she knew that she was being placed under arrest. According to defendant, the jury "found [her] guilty of resisting arrest for failing to put both of her hands behind her back when allegedly told to do so by Officer Savage." Defendant contends that "[w]hile there is dash camera footage of the encounter between [her] and Officer Savage, it does little to resolve the ambiguity surrounding the situation and whether the intention to arrest was clearly communicated ***, as the recording contains minimal audio, which crucially was not played for the jury[.]" She maintains that the evidence establishes that she pulled into the Subway parking lot after seeing several police cars behind her and that "[t]he encounter [with Savage] that followed, including a drastic escalation of force by police, unfolded so rapidly that [defendant] had no meaningful opportunity to understand she was being placed under arrest." She also contends that because the encounter began with questions about her children, the attempt to place her in handcuffs caught her off guard.

¶ 20    The argument is unpersuasive. First, defendant largely ignores Savage's testimony that he told her that he was arresting her. In her reply brief, she acknowledges Savage's testimony, but notes that she offered contrary testimony. However, the existence of conflicting testimony does not, in itself, give rise to a reasonable doubt of guilt. *People v. Baldwin*, 256 Ill. App. 3d 536, 542 (1994). "[T]he resolution of the conflicts and inconsistencies in the testimony is within the province of the jury." *Id.* Savage's testimony was sufficient to establish that he told defendant he was arresting her. In this respect, the most that can be said about the dashboard camera video, which was shown to the jury without sound, is that it neither corroborates nor refutes Savage's testimony. Moreover, according to Savage's testimony, what defendant refers to as a "drastic escalation of force" occurred after Savage told her that she was being arrested. Savage's testimony established that the situation escalated because defendant thereafter resisted his attempt to place her in handcuffs. Finally, that defendant may have been surprised that an encounter pertaining to children's welfare led to her arrest for an unrelated offense, it does not negate her knowledge of the arrest.

¶ 21    Citing *People v. Sadder-Bey*, 2023 IL App (1st) 190027, defendant next argues that the evidence is insufficient because "the momentary delay to Officer Savage's handcuffing of [defendant] did not materially interfere with her arrest." The argument is meritless. In *Sadder-Bey*, the court held that "crimes of obstruction, either of a peace officer *** or justice ***, include a requirement that defendant's obstruction be material." *Id.*, ¶ 36. The court added that "[w]hile an act might hinder or impede an officer in the technical sense, that hindrance or impediment may be 'so minimal as to not be considered a violation of the statute in question.' [Citation.]" *Id.* The court applied the same standard to acts of resistance. *Id.*, ¶ 39. All that standard requires, however, is "some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or

delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." (Internal quotation marks omitted.) *Id.*, ¶ 41. In *Sadder-Bey*, the defendant did not immediately comply with an order to step out of a vehicle (*id.*, ¶ 13) and stiffened his arms when an officer started to guide him out of the vehicle (*id.*, ¶ 6). The court concluded that the defendant was not guilty of resisting a peace officer. However, the court was careful to note that the defendant "never pulled his arm away or otherwise attempted to fight back." *Id.*, ¶ 45. Because in this case there was evidence that defendant pulled her arm away, *Sadder-Bey* is inapposite.

¶ 22    Defendant next contends that the trial court erred by preventing her from testifying (1) that Savage asked her why she hung up on him when he called her earlier; (2) that Savage did not tell her that her license was suspended; and (3) that she had no independent knowledge that her license was suspended. [1] "Evidentiary rulings are within the trial court's sound discretion and will not be reversed on appeal unless the trial court has abused that discretion." *People v. Williams*, 2022 IL App (2d) 200455, ¶ 108. Defendant maintains that the trial court abused its discretion by excluding evidence that, according to defendant was relevant to the issue of whether she knew that she was being arrested. Beyond that general assertion, defendant's reasoning is murky. She argues:

"The trial court's exclusion of her testimony also suppressed the natural flow of the interaction between defendant and Officer Savage. It left the jury with a fragmented and

---

[1]Defendant did not raise the second and third issues in her posttrial motion. To preserve an issue for review, a defendant must both object at trial and raise the issue in a written posttrial motion. *People v. Lewis*, 223 Ill. 2d 393, 400 (2006). However, the State does not argue that defendant forfeited these issues and we may therefore consider issues that were not properly preserved. *People v. Jones*, 2018 IL App (1st) 151307, ¶ 47. We do so here.

incomplete picture of what happened between them that night. [Defendant] believed that the interaction was going to be about her children because of the calls she received, was never asked to identify herself, and had no idea that she was going to be placed under arrest when Officer Savage grabbed her and threw her to the ground."

¶ 23 With respect to defendant's testimony that Savage asked her why she hung up on him, defendant notes that the trial court sustained the State's objection that the testimony was hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted, and is not admissible. (Ill. R. Evid. 801 (c) (eff. Oct. 15, 2015), Ill. R. Evid. 802 (eff. January 1, 2011). An out-of-court statement in question form can be an assertion and barred as hearsay. See *Estate of Parks v. O'Young*, 289 Ill. App. 3d 976, 981-82 (1997) (citing M. Graham, Cleary and Graham's Handbook of Illinois Evidence § 801.1, at 635-36 (6th ed. 1994)). In her reply brief, defendant argues, without specifically analyzing testimony about the alleged hang up question, that her excluded testimony was admissible because it was offered to show its effect on defendant. Out-of-court statements offered to show their effect on the listener are admissible. *People v. Darr*, 2018 IL App (3d) 150562, ¶ 53. However, all that the testimony would have established with respect to defendant's mental state is her awareness that Savage wanted to know why she hung up on him. That has no bearing on any issue in this case, and the trial court properly refused this testimony.

¶ 24 Moreover, the trial court did not err by sustaining the State's objection to defendant's testimony that Savage never told her that her license was suspended and that she had no independent knowledge of the suspension. Savage testified, "I told [defendant] *** that your license is suspended, you're under arrest." Defendant was permitted to testify that Savage never told her that she was under arrest. She does not dispute that, so long as the State proved to the

- 11 -

jury's satisfaction that defendant knew that she was being arrested, her understanding of the reason for the arrest is of no consequence. Defendant's theory of the relevance of the evidence appears to be that if she was unaware that there was any reason to arrest her, she might have been unaware that she was, in fact, being arrested. However, even evidence that meets the standard of relevance may be excluded "if its probative value is substantially outweighed by the danger of ***confusion of the issues[] or misleading the jury" (Ill. R. Evid. 403 (eff. Jan. 1, 2011)). As the trial court explained in its ruling defendant's motion for a new trial, the evidence in question had the potential to confuse the jury with respect to the mental state required to commit the offense of driving with a suspended license. The trial court did not abuse its discretion in excluding the testimony.

¶ 25    Defendant next argues that Savage's remarks about the criminal justice system in Illinois deprived her of a fair trial. As noted, Savage testified that he told defendant that Illinois was a "blue state" in order to reassure her that she would be released shortly after her arrest. He used "blue state" to convey that "Illinois may sometimes have *** a habit of being a little light on people." Defendant contends that Savage's testimony was prejudicial because Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act, which "abolish[ed] traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release" (*People v. Acosta*, 2024 IL App (2d) 230475, ¶ 19) was fresh in the public's mind when defendant's trial took place. According to defendant:

> "The public was subjected to months of publicized criticism and 'misinformation campaigns' over the [Pretrial Fairness Act]. Therefore, as the political climate surrounding criminal justice reform was charged in our state, it is reasonable to believe that jurors could have come into the courtroom already primed with strong opinions about whether Illinois was too lenient on crime."

¶ 26   Defendant acknowledges that because she did not object to the testimony in question, she forfeited review of the issue. However, she contends that the issue is reviewable under the plain error rule, which provides for review, notwithstanding forfeiture, where:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 27   Defendant maintains that because the evidence was closely balanced, review is appropriate under the first prong of the rule. Even where evidence is closely balanced, however, a forfeited error will not warrant reversal unless the error would have warranted reversal had it been properly preserved. *People v. Johnson*, 208 Ill. 2d 53, 64 (2003) ("Absent reversible error, there can be no plain error.") Here any error stemming from Savage's remarks was harmless. The Pretrial Fairness Act took effect in September 2023. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52. In suggesting that the controversy surrounding the Pretrial Fairness Act would have been fresh in the juror's minds defendant incorrectly states that her trial took place that same month. However, as recited in her brief's statement of facts, her trial actually took place in June 2025. There is no reason to believe that any subsisting controversy about the Pretrial Fairness Act, which had been in effect for over a year and a half, had any impact on the jury's verdict.

¶ 28   Defendant also argues that Savage's remarks may have swayed jurors to return a guilty verdict because "a juror who possibly had doubts about [defendant's] guilt [might] resolve those doubts in the State's favor, having just been told that her crime and punishment were 'not that big

- 13 -

of a deal and that she would not lose much from this case.' " However, Savage's remarks clearly pertained to the offense that he was attempting to arrest her for—driving with a suspended license—and the evidence that defendant was guilty of that offense was overwhelming. We are unpersuaded that Savage's remarks could have affected the jury's verdict.

¶ 29  Finally, defendant argues that both trial counsel and substitute counsel provided ineffective assistance. According to defendant, although trial counsel objected to Savage's testimony that he told defendant she was not going to jail, counsel should have requested a sidebar when Savage explained what he meant by "blue state." Defendant contends that "[c]ompetent counsel would have asked the court for a sidebar, where they could have made a clear record on why the testimony was irrelevant and should be excluded." Defendant argues that substitute counsel should have amended the posttrial motion arguing that Savage's testimony was prejudicial. We disagree.

¶ 30  Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), which requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." As we have observed:

> "We assess counsel's performance by using an objective standard of competence under prevailing professional norms. [Citation.] To establish deficient performance, the defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy. [Citation.]" *People v. Wise*, 2019 IL App (2d) 160611, ¶ 52.

¶ 31  It was entirely reasonable for trial counsel not to request a sidebar, which could have drawn more attention to Savage's testimony, than simply letting Savage proceed with his testimony and

move on to other subjects. Thus, defendant has not overcome the presumption that it was sound strategy not to request a sidebar.

¶ 32    Likewise, substitute counsel did not perform deficiently by not amending defendant's motion for a new trial to raise the issue of Savage's purportedly prejudicial testimony. According to defendant:

> [Substitute counsel] had every reason to amend the post-trial motion before litigating it, but instead he did not and simply adopted the motion as written and left [defendant] with an unpreserved issue. This error cannot be attributed to trial strategy, as there was no reason for counsel to abandon a preserved, meritorious issue. The failure to include it was clearly an oversight, not a strategic decision."

The argument is meritless. "Counsel is not required to raise every trial objection in a post-trial motion. The inclusion of an issue is a matter of trial strategy; such strategy is entitled to great deference on review." *People v. Schnurr*, 206 Ill. App. 3d 522, 527 (1990). Defendant's characterization of the issue as "preserved [and] meritorious" is only half correct at best. As discussed above, any error in permitting Savage to express opinions about the criminal justice system, as it applied to a charge for which defendant had no defense, was harmless.

¶ 33                                   III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 35    Affirmed.